UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JANA WHITTINGTON,              )
                               )
            Plaintiff          )
                               )
      v.                       )   CIVIL NO. 2:09 cv 9
                               )
TRUSTEES OF PURDUE UNIVERSITY; )
PURDUE UNIVERSITY CALUMET,     )
                               )
            Defendant          )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 38] filed by the defendants, Trustees of Purdue
University and Purdue University Calumet ("Purdue"), on July 15,
2011, and the Motion to Strike [DE 47] filed by Purdue on Novem-
ber 9, 2011.  For the reasons set forth below, the Motion for
Summary Judgment is **GRANTED,** and the Motion to Strike is **DENIED
AS MOOT.**

Background

In July 2001, the plaintiff, Jana Whittington, was hired as
a visiting Assistant Professor in the Mechanical Engineering
Technology and Supervision ("METS") Department at Purdue Univer-
sity Calumet.  In 2002, she was promoted to an assistant profes-
sor on a tenure track.  At the time she was hired, Purdue did not
offer a Computer Graphics Technology Program.  The program later
was developed, and Whittington became the program coordinator.

As the program coordinator, Whittington's immediate supervisor was Professor Mohammad Zahraee, who served as the head of the METS department. Initially, Whittington was the only full-time faculty member in the Computer Graphics Technology Program. In 2005, Michael Roller and Whittington's husband, Kim Nankivell, were hired as professors in the Computer Graphics Technology Program on a tenure track. As the program coordinator, Whittington referred student complaints to Zahraee and Dennis Korchek, the Dean of the School of Technology.

In February 2006, a student complained to Whittington that Roller offended and insulted her in front of the class by saying she worked in a whorehouse. During a meeting regarding the complaint, Zahraee told Whittington that the problem was not with the professor who called the student a whore, but with her. Whittington reported that Zahraee's attitude towards her changed after the meeting and that he and others in the department, including Roller, made demeaning and sexist comments directed toward her on a continual basis. This made it difficult for her to function and teach her classes.

Whittington was up for promotion in the fall of 2006. The Purdue policy for all promotion and tenure candidates includes review and approval from three committees before the promotion is presented to the Board of Trustees at West Lafayette for ap-

proval.  Until this point, Whittington never had received nega-
tive feedback from the METS Promotion and Tenure Committee or
Zahraee.  Whittington prepared her document for promotion and was
asked to restructure it.  She made the changes based on the
recommendations of the committee and resubmitted it the next day.
Whittington later was informed that she did not receive the
promotion and tenure.

Around the same time Whittington was up for promotion, on
September 15, 2006, Whittington filed a formal complaint against
Zahraee with the Office of the Chancellor.  The complaint alleged
that Zahraee and Roller created a severe and pervasive atmosphere
of sexual harassment and that she received less pay than her male
counterparts.  Specifically, she complained that Zahraee and
Roller made inappropriate comments and verbal threats.  Chancel-
lor Howard Cohen appointed Victor Holden, the former Associate
Director of Equal Employment Opportunity/Diversity, to investi-
gate the matter.  Holden interviewed the parties to the com-
plaint, other faculty members and employees, and several stu-
dents.  Upon completion of his investigation, Holden concluded
that Whittington was not properly compensated for release time
and overloads but that the evidence did not support a finding of
retaliation or gender discrimination.

Cohen reviewed the investigator's report and documentary evidence and sought the advice of the Advisory Committee on Equity. Cohen found that a preponderance of the evidence supported a finding that Whittington was not properly compensated compared to the other members of the department and instructed Zahraee to compensate Whittington for her previous work at a rate comparable to other positions within the department. Because Whittington's complaint was filed about the time the Promotion and Tenure Committee was considering Whittington's document for promotion and tenure, Cohen also instructed the second reviewing committee to conduct its review of Whittington's case for promotion and tenure *de novo*. With regard to Whittington's complaints of sexual harassment, Cohen determined that Whittington's charges against Zahraee and Roller did not rise to the level of harassment and could not be substantiated.

On March 19, 2007, Cohen informed Whittington's attorney that the appropriate dollar amount to fully compensate Whittington for the pay disparity was $15,000. Whittington accepted and received $15,000 in compensation for the release time and overload in accordance with the determination.

Whittington also filed a second internal formal complaint on November 2, 2006, alleging retaliation as a result of filing the formal complaint on September 15, 2006, against Zahraee. Whit-

tington alleged that Zahraee made inaccurate statements to the Promotion and Tenure Committee in stating that she was going up for promotion early. Because Whittington's initial complaint was filed around the same time she was being considered for promotion, Cohen already had directed the School of Technology Committee to conduct its review *de novo*, without reference to the department review. Whittington moved forward with her promotion and tenure, and she was recommended for promotion and tenure by the School of Technology and University Committees. The Board of Trustees reviewed Whittington's documents and recommended that she receive promotion and tenure. Cohen found that Whittington experienced retaliation in her primary committee review, but he determined that further corrective action regarding Whittington's promotion and review was not necessary because the department committees recommendation was set aside and Whittington received promotion and tenure. Moreover, Zahraee was removed from department head and chair of the primary committee. Cohen ordered that all documents detrimental to Whittington be removed from her file.

On December 5, 2007, Whittington's attorney sent a letter to Cohen alleging that Professors Reza Kamali and Zahraee had adopted a course of action to retaliate against Whittington and Nankivell. The letter to Cohen also alleged that Kamali and

Zahraee intentionally inflicted emotional distress on Whittington and Nankivell.  Whittington alleged that Kamali ordered her to move her office despite her protest that her new office was known by the Purdue-Calumet community to have mold.  Whittington provided notice that mold could adversely affect her asthma condition.  She alleged that shortly after moving into her office, she had an asthma attack caused by the mold condition.  Whittington further stated that the hostile work environment at Purdue-Calumet made it difficult for Nankivell and her to do their jobs.  Cohen treated the December 5, 2007 letter as a formal complaint and invoked the University's right to investigate the allegations.

On December 27, 2007, Whittington filed a charge of discrimination with the EEOC.[1]  Whittington complained that she had been discriminated against based on sex and disability and that she had been retaliated against for filing a complaint.  She specifically alleged that she received less pay and was required to do more work than her male counterparts.  She also alleged that actions of a certain administrator caused her emotional distress.

On January 24, 2008, Cohen appointed Patricia Carlisle to investigate the matters raised in the December 5, 2007 letter from Whittington's attorney.  On March 3, 2008, Carlisle con-

---

[1] The charge was file stamped by the EEOC on January 8, 2008.

cluded her report of the investigation. Carlisle determined that there was no preponderance of evidence to support that Zahraee and Kamali were intentionally inflicting emotional distress on Whittington. Through the course of the investigation, Carlisle found that the School of Technology was reorganized in February of 2007, resulting in all four program coordinators being eliminated. Carlisle addressed Whittington's complaint that Kamali ordered Whittington to move her office on campus to the Gyte Building, a building known to have mold in it. The previous complaints about the air quality primarily were restricted to the lower level of the building. Evidence supported air quality within industry standards. Carlisle concluded that the preponderance of the evidence supported a finding that Kamali made the decision to request relocation of the tenure and tenure track faculty for legitimate administrative reasons and that he attempted to respond in an appropriate manner to concerns expressed by Whittington. Finally, Carlisle addressed the final allegation that repeated actions of Kamali and Zahraee to retaliate against Whittington and Nankivell caused emotional distress. Carlisle determined that the evidence did not support an intent to inflict emotional distress or retaliation on the part of Zahraee or Kamali.

On October 22, 2008, Whittington received her right to sue letter from the U.S. Department of Justice — Civil Rights Division. Whittington filed her complaint on January 16, 2009, alleging discrimination in pay, sexual harassment, creation of a hostile working environment, and retaliation. Purdue filed a motion for summary judgment on July 15, 2011. Whittington responded on September 26, 2011, and Purdue now moves to strike certain portions of the documents Whittington submitted in support of her response as inadmissible.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury reason-

ably could find for the nonmoving party. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. ***Ashman v. Barrows,*** 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. ***Wheeler***, 539 F.3d at 634 (*citing* ***Anderson***, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the

9

> governing law, there can be but one reason-
> able conclusion as to the verdict.

> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc*.**, 530 U.S. 133,
149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000)
(setting out the standard for a directed verdict); ***Celotex Corp*.**,
477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786;
***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008)
(stating that a genuine issue is one on which a reasonable fact
finder could find for the nonmoving party); ***Springer v. Durfling-
er,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine
issue exists and summary judgment is inappropriate if there is
sufficient evidence for a jury to return a verdict for the
nonmoving party).

Title VII covers two types of employment discrimination,
including discrete acts and acts that create a hostile workplace.
***National R.R. Passenger Corp. v. Morgan,*** 536 U.S. 101, 114-15,
122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). *See also* ***Turner v.
The Saloon, Ltd.,*** 595 F.3d 679, 683 (7th Cir. 2010). Discrete
acts include "termination, failure to promote, denial of trans-
fer, or refusal to hire, are easy to identify. Each incident of
discrimination and each retaliatory adverse employment decision
constitutes a separate actionable 'unlawful employment prac-
tice.'" ***National R.R. Passenger Corp.,*** 536 U.S. at 114, 122

S.Ct. at 2073.  42 U.S.C. §20003-5(e)(1) provides that a charge of discrimination arising from discrete acts must be filed within 300 days of the act in states that have a state agency authorized to mandate relief when a violation is found, or within 180 days otherwise.  Indiana is a deferral state, rendering the charge of discrimination due within 300 days of the occurrence of the act. ***Doe v. R.R. Donnelley & Sons Co.***, 42 F.3d 439, 445 (7th Cir. 1994).  An unlawful practice is said to have occurred on the date of the discrete act that caused the loss that led to the party filing a charge with the EEOC.  ***National R.R. Passenger Corp.,*** 536 U.S. at 110-11, 122 S.Ct. at 2061.

Acts that create a hostile workplace are different than discrete acts because their nature involves repeated conduct, and they occur as part of a series, which can be span over an amount of days, months, or years.  "[A] single act of harassment may not be actionable on its own." ***National R.R. Passenger Corp.,*** 536 U.S. at 115, 122 S.Ct. at 2073.  The time for filing only requires that a plaintiff file her charge within a certain number of days after an unlawful practice has occurred.  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." ***National R.R. Passenger Corp.,*** 536 U.S. at 117, 122 S.Ct at 2074.

*See also* **Vance v. Ball State University**, 646 F.3d 461, 468 (7th Cir. 2011) (noting that "[w]hen a plaintiff initiates a hostile work environment lawsuit, as opposed to a suit claiming discrimination based on discrete acts, she usually complains of an employer's continuing violation of Title VII 'based on the cumulative effect of individual acts.'").

In 2009, Congress passed the Lilly Ledbetter Fair Pay Act and extended the statute of limitations for filing a charge of discrimination arising from a particular discrete act, past discriminatory pay decisions. The Fair Pay Act provides that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision. The FPA added the following section to Title VII:

> (3)(A) [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
>
> (B) In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1),

including recovery of back pay for up to two
years preceding the filing of the charge,
where the unlawful employment practices that
have occurred during the charge filing period
are similar or related to unlawful employment
practices with regard to discrimination in
compensation that occurred outside the time
for filing a charge.

42 U.S.C. §2000e-5(e)(3)(A)-(B)

Therefore, an employee who receives a paycheck more than 300 days
after the discriminatory pay decision was made retains her right
to pursue a charge of discrimination.

Whittington alleges that she was subjected to a hostile work
environment, was discriminated against based on her gender, suf-
fered retaliation for filing an internal complaint, and received
inadequate compensation compared to her male counterparts.  In
support of her complaints, Whittington cites several events, some
of which occurred more than 300 days before she filed her charge
of discrimination with the EEOC, including that Purdue blocked
her tenure, permitted a hostile work environment, demoted her
rank by taking away her duties as program director, retaliated
against her for filing an internal complaint, moved her office to
a mold infested storage room, and usurped her grant.  Purdue has
moved for summary judgment and argues that the events giving rise
to Whittington's claims occurred more than 300 days preceding the
date she filed her EEOC charge and are barred by the statute of
limitations.  Whittington counters that the Fair Pay Act permits

litigants to bring charges of discrimination arising two years
before the charge was filed.  Because she filed her claim with
the EEOC on January 8, 2008, Whittington argues that the charge
may encompass all discriminatory acts back to January 8, 2006,
including her September 15, 2006, and November 2, 2006, internal
complaints.

The Fair Pay Act only extends the statute of limitations for
claims arising from discriminatory decisions in compensation.
This is because each paycheck with inadequate pay reflects and
reinforces the discriminatory decision.  Neither Congress nor any
court has amended the statute of limitations for any other type
of discrimination claim.  Title VII specifically states that a
claimant has 300 days to report a discriminatory act, and Whit-
tington has provided no authority to show that Title VII has been
amended by the Fair Pay Act to encompass any form of discrimina-
tion other than that arising from discriminatory practices in
compensation.  By its terms, the Fair Pay Act is limited to
situations "when an individual becomes subject to a discrimina-
tory compensation decision or other practice, or when an indi-
vidual is affected by application of a discriminatory compensa-
tion decision or other practice, including each time wages, bene-
fits, or other compensation is paid, resulting in whole or in
part from such a decision or other practice." 42 U.S.C. §2000e-

5(e)(3)(A). Therefore, any discriminatory acts that occurred before March 2, 2007, and are unrelated to discriminatory decisions in compensation or harassment, are time barred.

Specifically, Whittington relies on the facts presented in the internal complaints she filed with Purdue to support her position. In the September 15, 2006, internal complaint, Whittington alleged that she was harassed, discriminated against, and not properly compensated. Whittington complained that she was told she was the cause of the problems with the students, was told she was menopausal, and was retaliated against for notifying human resources of her gender, harassment, and program issues because Zahraee blocked her tenure and usurped her grant. Whittington also filed an internal complaint on November 2, 2006, alleging that she was retaliated against for filing the September 15, 2006 complaint against Zahraee, explaining that he misrepresented to the promotion and tenure committee that she was going up early for tenure. The internal complaints were investigated and Cohen reached a final decision prior to March 2, 2007. Because some of the events Whittington refers to were discrete employment actions occurring prior to March 2, 2007, they fall outside the statute of limitations. Specifically, the court will not consider Zahraee's actions as related to Whittington's tenure

process, her allegations that Purdue usurped her grant, or her claim of retaliation for complaining to human resources.

Because the Fair Pay Act extended the statute of limitations for claims arising from discriminatory practices in compensation, the court may consider Whittington's complaint of inadequate pay as raised in her September 15, 2006, internal complaint. Purdue investigated this complaint and awarded Whittington $15,000, which she accepted. Whittington concedes that "[s]he is not bringing a claim for additional pay with respect to her base salary" and that "her primary allegations of violations of Title VII concern the retaliation and hostile work environment." (Pltf. Br. p. 14) Whittington essentially agrees that she is not pursuing a claim for additional pay. The parties previously resolved the dispute concerning the inadequacies of her compensation, and Whittington accepted the settlement. Whittington has not set forth any evidence or argument to support a claim that she was not compensated fairly for her work since the time her prior complaint was resolved, and therefore she has not stated a claim rising under the Fair Pay Act.

Following Whittington's internal complaints, Zahraee stepped down as head of the department and was replaced by Kamali. Whittington contends that this did not end the harassment and retaliation. Kamali ordered Whittington to move her office

despite her protest that her new office was in a building known to have mold.  Whittington had asthma, and informed Kamali that the mold could adversely affect her position.  Kamali also took away her duties as program coordinator and did not allow her to teach normal courses.  Whittington's attorney sent a letter to Cohen on December 5, 2007, itemizing these complaints.  Cohen treated the letter as an internal complaint and began an investigation.  Because these events arose after March 2, 2007, they are not time barred and must be evaluated on the merits.

Title VII of the Civil Rights Act of 1964 "forbids employment discrimination against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.'" ***Burlington Northern & Santa Fe Railroad Company v. White,*** 548 U.S. 53, 56, 126 S.Ct. 2405, 2408, 165 L.Ed.2d 345 (2006) (*citing* Pub.L., 88-352, §704, 78 Stat. 257, as amended, 42 U.S.C. §2000e-2(a)). Title VII's separate antiretaliation provision "seeks to prevent harm to individuals based on what they do, i.e., their conduct." ***Burlington Northern,*** 548 U.S. at 63, 126 S.Ct. at 2412.

Unlawful retaliation in violation of Title VII occurs "when an employer takes actions that 'discriminate against' an employee because she has opposed a practice that Title VII forbids", or "because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing." ***Kampmier v. Emeritus Corp***, 472 F.3d 930, 939 (7th Cir. 2007)(internal quotations omitted) (*citing **Burlington Northern,*** 548 U.S. at 59, 126 S.Ct. at 2410); 42 U.S.C. §2000e-3(a). An employer also may retaliate against an employee "by taking actions not directly related to [ ] employment or by causing [ ] harm outside the workplace." ***Burlington Northern***, 548 U.S. at 63, 126 S.Ct. at 2412. *See also **Thompson v. North American Stainless, LP***, ___ U.S. ___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011). Whittington has two ways of proving retaliation: directly or indirectly. ***Kampmier***, 472 F.3d at 939.

To prove retaliation under the indirect method, "a plaintiff must first establish a prima facie case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment." ***Keeton v. Morningstar***, 2012 WL 130456, *5 (7th Cir. 2012). There must be evidence that, "after filing the [complaint of discrimination] only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." ***Kampmie***r, 472 F.3d at 940 (*citing **Stone v. City of Indianapolis***, 281 F.3d 640, 644 (7th Cir. 2002)). The

18

burden then shifts to the defendant to offer a non-discriminatory reason for the adverse employment action. ***Keeton,*** 2012 WL 130456 at *5. The plaintiff is given the final opportunity to show that the non-discriminatory reason is a pretext. ***Keeton,*** 2012 WL 130456 at *5*.*

The Supreme Court has stated that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." ***Burlington Industries, Inc. v. Ellerth,*** 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). The Seventh Circuit has set forth the following categories of materially adverse employment under Title VII:

> (1) cases in which the employee's compensa-
> tion, fringe benefits, or other financial
> terms of employment are diminished, including
> termination; (2) cases in which a nominally
> lateral transfer with no change in financial
> terms significantly reduces the employee's
> career prospects by preventing her from using
> her skills and experience, so that the skills
> are likely to atrophy and her career is like-
> ly to be stunted; and (3) cases in which the
> employee is not moved to a different job or
> the skill requirements of her present job
> altered, but the conditions in which she
> works are changed in a way that subjects her
> to a humiliating, degrading, unsafe, un-
> healthful, or otherwise significantly nega-
> tive alteration in her workplace environment.
>
> ***O'Neal v. City of Chicago***, 392 F.3d 909, 911
> (7th Cir. 2004) (*citing* ***Herrnreiter v. Chi.***

*Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002))

Whittington first complains that she was retaliated against because Purdue demoted her by taking away her duties as program coordinator.  Purdue investigated this complaint and concluded that the School of Technology was reorganized in February 2007, resulting in the elimination of all four program coordinators. Whittington acknowledged that the School of Technology was reorganized, but she contends that Cohen told her she would keep her program coordinator position and continue the job as she had. Although removal from a position may be an adverse employment action, to establish a prima facie case Whittington must show that she was treated less favorably than someone who did not file a complaint.  *See Keeton*, 2012 WL 130456 at *5 (setting forth the elements to assert a prima facie case of retaliation).  Because all four program coordinator positions were eliminated in the restructuring, Whittington was treated the same as other simi- larly situated employees.  Whittington has not shown that she was treated differently than similarly situated employees who did not file a complaint, so she has not established a prima facie case of retaliation.  Whittington acknowledges that the program was restructured and has submitted no proof that she was singled out when she was removed from her position as program coordinator.

Whittington next complains that she was retaliated against for filing a complaint because she was forced to relocate her office to the Gyte building, which was known to have mold. Again, Whittington has failed to show that she was singled out and treated less favorably than other similarly situated employees who had not filed a complaint. It is undisputed that the School of Technology was being reorganized and that Purdue also asked Roller and Nankivell to relocate to the Gyte building. Purdue performed an air quality test and found the air to be within industry standards. The record is devoid of any indication that Whittington's office should not have been occupied or was in a poorer condition than other professors, both those required to relocate to the Gyte building as part of the reorganization and those who were not. Whittington was treated the same as the other tenure track professors in her program. Instead of re-questing equal treatment, Whittington was asking to be treated more favorably than the other professors in her program. Title VII does not ensure favorable treatment. Absent evidence that she was treated adversely when compared to a similarly situated professor, Whittington has not established a prima facie case on the evidence before the court.

Whittington also alleges that she was retaliated against because she was removed from the visualization committee and

denied membership to the curriculum committee in addition to other committees that she was unable to identify by name. Whittington has not shown that Purdue's removal and refusal to allow her to serve on a select few committees was a materially adverse employment action or that she was treated differently than other similarly situated employees. Whittington cannot recall what committees she was denied membership to beside the curriculum committee. Professors do not have a right to serve on a committee, and because Whittington was not previously a member of the curriculum committee, denying her membership did not adversely affect her job by altering the conditions or her long-term career prospects. Purdue did not take anything that Whittington was entitled to away from her. Moreover, Whittington has made no attempt to show that other similarly situated employees never were denied membership to a committee and were treated more favorably.

Whittington also was removed from the visualization committee. Her removal did not affect her compensation or benefits, nor has she demonstrated that the removal reduced her career prospects or prevented her from using her skills and experience to enhance her career. Whittington's desire to serve on the committee alone was not enough to constitute an adverse employment action absent some indication that the rejection would have

a negative impact on her career, significantly alter her respon-
sibilities, or subject her to humiliation or a degrading, unsafe,
or significantly negative alteration in her workplace environ-
ment. *See O'Neal*, 392 F.3d at 911 (explaining what constitutes
an adverse employment action). Again, Whittington has failed to
show that similarly situated employees were treated more favor-
ably in this respect. Whittington has not pointed to one other
tenure track professor who never was denied membership to or
removed from a committee, nor has she shown that she was entitled
to serve on any committee she chose. Purdue was not attempting to
keep her off of every committee, as she was invited to join a
different committee, which she refused. For these reasons,
Whittington has not presented a prima facie case of discrimina-
tion by exclusion from the visualization committee, and the
record appears devoid of evidence to support a finding either
that she suffered an adverse employment action when she was
removed from the committee or that she was treated differently
than other professors.

Whittington finally contends that she was retaliated against
because she was not given her classes for the 2008-2009 school
year until the last minute although all other faculty had re-
ceived their schedule of classes. Purdue changed the classes
that Whittington normally taught to ones that were not in her

area of expertise, and because of the delay in providing her schedule, she did not have time to prepare. Whittington complained of being pulled from her normal courses at a meeting. After some discussion, Purdue placed Whittington in the courses she normally taught. (Whittington Dep. p. 161 ll. 15-16)

If Purdue had maintained the altered schedule and had not allow Whittington to teach the classes in her areas of expertise, Whittington arguably would have suffered an adverse employment action. Removal from her area of expertise would have required more preparation time without additional compensation and would have prevented her from using her skills and expertise to advance her career. *O'Neal*, 392 F.3d at 911 (explaining the types of decisions that constitute an adverse employment action). After some disagreement, Purdue agreed to allow Whittington to teach her normal courses, and Whittington has not shown how the delay in receiving her class schedule adversely affected her ability to perform or altered the conditions or prospects of her career in such a significant manner as to constitute an adverse employment action. Whittington ultimately taught the courses she desired in her area of expertise.

Whittington also has complained that she was harassed and subjected to a hostile work environment after filing her internal complaints. Although most of the events that gave rise to her

hostile work environment claim arose prior to March 2, 2007, Whittington complains that the harassment continued after Zahraee was removed and Kamali was appointed as her superior. Because some events giving rise to her claim fell within the statue of limitations, the court may consider acts that occurred more than 300 days before Whittington filed her charge of discrimination with the EEOC.

Title VII provides that it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. §2000e-2(a)(1). See also *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 63, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Included in this "spectrum" is a prohibition against "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Thus, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370 (quotation marks and citations omitted).

To establish that she was subjected to a hostile work
environment, a plaintiff must show that

> (1) she was subjected to unwelcome sexual
> advances in the form of requests for sexual
> favors or other verbal or physical conduct of
> a sexual nature; (2) the harassment was based
> on [her] sex; (3) the sexual harassment had
> the effect of unreasonably interfering with
> [her] work performance in creating an intimi-
> dating, hostile, or offensive working envi-
> ronment that affected seriously the psycho-
> logical well being of the plaintiff; and (4)
> there is a basis for employer liability.
>
> ***Romansizak-Sanchez v. International Union of
> Operating Engineers, Local 150, AFL-CIO,*** 121
> Fed. Appx. 140, 144-45 (7th Cir. 2005) (*quot-
> ing **Hall v. Bodine Electric Company***, 276 F.3d
> 345, 354-55 (7th Cir. 2002))

*See also **Overly v. KeyBank National Assn.,*** 662 F.3d 856, 862 (7th
Cir. 2011); ***Rhodes v. Illinois Department of Transportation,*** 359
F.3d 498, 505 (7th Cir. 2004).  A work environment must be both
subjectively and objectively offensive in order to be hostile.
***Overly,*** 662 F.3d at 862; ***Rhodes,*** 359 F.3d at 505 (*quoting **Hilt-
Dyson v. City of Chicago***, 282 F.3d 456, 463 (7th Cir. 2002)).
Whether an environment is objectively hostile depends on "all the
circumstances including the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interfered with an employee's work performance."
***Romansizak-Sanchez,*** 121 Fed. Appx. at 145 (*quoting **Smith v.**

*Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir.

2004)).  See also *Wyinger v. New Venture Gear, Inc.*, 361 F.3d

965, 975-76 (7th Cir. 2004).

In determining whether harassment was "based on sex" in the

context of a hostile environment claim, "[t]he critical issue

. . . is whether members of one sex are exposed to disadvanta-

geous terms or conditions of employment to which members of the

other sex are not exposed." *Oncale v. Sundowner Offshore Ser-*

*vices,* 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201

(1998).  *See also* *Hilt-Dyson*, 282 F.3d at 462-63.  In other

words, "an employer cannot be held liable for creating or condon-

ing a hostile working environment unless the hostility is moti-

vated by gender." *Berry v. Delta Airlines, Inc.,* 260 F.3d 803,

808 (7th Cir. 2001).  *See also* *Oncale,* 523 U.S. at 80, 118 S.Ct.

at 1002 (Ginsburg, J., concurring) (noting that although harass-

ment "need not be motivated by sexual desire," it must be "clear

that the harasser is motivated by general hostility to the pres-

ence of" a particular gender).  Thus, the simple fact that a

victim is female does not satisfy the requirement that the

harassment she experienced is based on her sex. *See Herron v.*

*Daimlerchrysler Corporation,* 388 F.3d 293, 303 (7th Cir. 2004)

(finding that the plaintiff's membership in a protected class

"does not transform" harassment related to him into harassment

27

related to his race).  In particular, harassment based on the
fact that the victim had jilted the harasser romantically does
not fall under the purview of Title VII protection.  *See **Hueb-
schen v. Department of Health and Social Services,*** 716 F.2d 1167,
1172 (7th Cir. 1983).

In addition to establishing that the harassment was based on
sex, Whittington must establish employer liability. *See **Romansi-
zak-Sanchez,*** 121 Fed. Appx. at 144-45.  If the harasser was a
supervisor, the employer is strictly liable with the possibility
of an affirmative defense when the harassment did not result in a
tangible employment action.  *See **Vance***, 646 F.3d at 469-70 (*cit-
ing **Williams v. Waste Management of Illinois***, 361 F.3d 1021, 1029
(7th Cir. 2004)); ***Rhodes***, 359 F.3d at 505.  If the harasser was
not a supervisor, then Whittington must show that her employer
was negligent in failing to discover or remedy any harassment.
***Vance***, 646 F.3d at 470; ***Loughman v. Malnati Organization, Inc.,***
395 F.3d 404, 407 (7th Cir. 2005); ***Rhodes***, 359 F.3d at 505-06.

Under the negligence standard for coworker harassment, the
court must look at the employer's total response to the alleged
harassment.  ***McKenzie v. Illinois Department of Transportation,***
92 F.3d 473, 480 (7th Cir. 1996).  An employer only is liable "if
the employer knew or should have known about the coworker's acts
of harassment and fails to take appropriate remedial action."

*Berry,* 260 F.3d at 811 (alteration, citation, and quotations omitted). *See also* ***Cardenas v. Frito-Lay, Inc.,*** 2002 WL 32357082, *5 (W.D. Wis. Sept. 30, 2002). Remedial action is appropriate if it is prompt and reasonably calculated to end the harassment under the particular circumstances of the case, although the employer's liability does not hinge on the actual cessation of harassment. *See **Berry,*** 260 F.3d at 811; ***McKenzie***, 92 F.3d at 480; ***Saxton v. American Telephone and Telegraph Company***, 10 F.3d 526, 536 (7th Cir. 1993). In addition, the victim's expectations of behavior by her employer have no bearing on the negligence analysis. *See **Cardenas,*** 2002 WL 32357082 at *7 ("Plaintiff might disagree with how certain aspects of the investigation and response were handled, but . . . this is legally irrelevant."); ***Motley v. Tractor Supply Company,*** 32 F.Supp.2d 1026, 1050-51 (S.D. Ind. 1998)("Just because the employee expected more from the employer, or a different response, does not mean that the employer failed to take appropriate remedial action, once it was on notice of the problem."). *See also **Saxton,*** 10 F.3d at 526.

Whittington complains that Zahraee, Kamali, and Roller harassed her and created a hostile work environment. In support of her claim, Whittington alleges that Zaharee told her she needed counseling and Kamali would talk over her at meetings. Roller threatened her by telling her that he would "shove [her]

nose on the side of [her] face.  (Whittington Dep. p. 74)  She

also stated that Roller would come into her office, lean over

her, and berate her with statements such as, "you're pissed.  I

can tell you're pissed."  (Whittington Dep. p. 74)  Roller also

told Whittington that he had a history of issues with women.

Later, she alleged that Roller would yell at her during meetings

and talk over her.

Title VII is not a general civility code for the workplace.

*See Oncale*, 523 U.S. at 81, 118 S.Ct. at 1002-03 ("[t]he statute

does not reach genuine but innocuous differences in the ways men

and women routinely interact with members . . . of the opposite

sex).  The utterances must be based on sex and be so extreme to

amount to a change in the terms or conditions of employment.  *See*

*Romansizak-Sanchez,* 121 Fed. Appx. at 145 (listing factors and

circumstances to consider when determining whether the standard

for hostile work environment is met).  Zahraee, Kamali, and

Roller's conduct, while possibly inappropriate, was not based on

Whittington's gender and appears to be routine workplace dia-

logue, particularly their behavior in meetings.  There are going

to be disagreements among supervisors and subordinates as well as

between coworkers.  Title VII only provides a remedy in limited

circumstances, when the harassment arises because of an em-

ployee's gender or other protected characteristic.  Absent any

indication that Kamali and Zahraee conducted themselves in this manner because of Whittington's gender, Title VII does not provide a remedy. Whittington has shown nothing more than a few isolated incidents that were not of a sexual nature and were outside the scope of Title VII.

Whittington also has complained that another employee told her she was menopausal. Although this comment is gender based, Whittington has not demonstrated that this single comment was so offensive to alter the terms of her employment and to rise to the level of severity necessary to meet the standard for a hostile work environment. Rather, it appears that this isolated incident was made with no frequency and was of mild severity. *See **Faragher v. City of Boca Raton***, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) ("conduct must be extreme to amount to a change in the terms and conditions of employment).

Finally, in her complaint Whittington stated that she was subjected to sexist comments. However, Whittington has not pointed to any evidence to substantiate her claim. A plaintiff may not rest on her pleadings on summary judgment. ***Smart v. State Farm Ins. Co.***, 868 F.2d 929, 931 (7th Cir. 1989) (*citing **Celotex***, 477 U.S. at 324, 106 S.Ct. at 1553). Whittington has not shown any connection between her gender and the conduct and comments she was subjected to. Although some of the conduct may

have been offensive, Title VII does not provide a remedy for every type of misbehavior within the office. Whittington has failed to set forth a prima facie case.

Because Whittington is unable to make a prima facie case for discrimination or retaliation based on all the evidence of record, there is no need to address Purdue's Motion to Strike.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 38] filed by the defendants, Trustees of Purdue University and Purdue University Calumet ("Purdue"), on July 15, 2011, is **GRANTED,** and the Motion to Strike [DE 47] filed by Purdue on November 9, 2011, is **DENIED AS MOOT.**

ENTERED this 2nd day of March, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge